# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 19-1591V**
UNPUBLISHED

| | |
|---|---|
| CURTIS SCOTT TURLEY,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: March 26, 2021<br><br>Special Processing Unit (SPU); Dismissal; Statutory Six-Month Requirement; Insufficient Evidence; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*David Charles Richards, Christensen & Jensen, P.C. Salt Lake, UT, for Petitioner.*

*Meghan Murphy, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION[1]

On October 11, 2019, Curtis Scott Turley filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges the Table claim that he suffered a left shoulder injury related to vaccination administration ("SIRVA") after receiving the influenza ("flu") vaccine on October 16, 2017. Petition at 1, ¶¶ 3,18.

For the reasons set forth below, I hereby DENY entitlement in this case. Petitioner has not preponderantly established that he suffered the residual effects of his alleged SIRVA for more than six months. Section 11(c)(1)(D)(i) (statutory six-month requirement).

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Relevant Procedural History

Following the completion of the Pre-Assignment Review process, Petitioner was ordered to file medical records establishing that he suffered the residual effects of his injury for more than six months or required an in-hospital surgical procedure. ECF No. 7. In response, he indicated that he could not do so because he had sought medical treatment for his injury for only two weeks post-vaccination, or until October 31, 2017. Status Report, filed Dec. 2, 2019, at 1-2, ECF No. 8. Petitioner nevertheless requested additional time to file witness affidavits to support his assertions. *Id.* at 2. To that end, on March 6, 2020, Petitioner filed affidavits from his brother, wife, and mother. Exhibits 7-9, ECF No. 12. On March 11, 2020, the case was assigned to the Special Processing Unit of the Office of Special Masters. ECF No. 14.

Prior to the initial status conference, Petitioner was ordered to file additional medical records which appeared to be outstanding, specifically medical records from any post-vaccination medical care even if not for treatment of his alleged SIRVA injury. ECF No. 17. It was noted that, prior to vaccination, Petitioner routinely sought medical care for his diabetes and other conditions. *Id.* at 2. Petitioner was informed that, as a general matter, Vaccine Program claimants are required to file medical records from their primary care providers and/or any relevant specialist from three years prior to vaccination to the present. *Id.* (citing *Guidelines to Practice Under the National Vaccine Injury Program,* which can be found on the court's website at www.uscfc.uscourts.gov).

On June 23, 2020, Petitioner filed a status report indicating he had filed all medical records required by Section 11(c). ECF No. 20. During the July 20, 2020 initial status conference, Petitioner's counsel explained that Petitioner had been reluctant to seek medical treatment for his SIRVA because his occupation as a fireman obligated him to report treatment that might impact his job performance. Nevertheless, it was noted that Petitioner's claim could not succeed if he could not establish the "severity" requirement through some form of evidentiary submission. Additionally, it was stressed that Petitioner still needed to file his post-vaccination medical records, even if not related to treatment of his SIRVA.

During the subsequent three months, Petitioner filed his post-vaccination medical records and a supplemental affidavit. Exhibits 10-13, ECF Nos. 22-25. These medical records showed treatment for other issues, but contained no evidence of any symptoms related to Petitioner's SIRVA. In his supplemental affidavit, Petitioner attested to concerns related to his employment as a fireman which prevented him from seeking medical care, provided the dates of his employment from 2016 to the present, and asked to present testimony regarding his ongoing symptoms. Exhibit 13 at ¶¶ 8-11, 16.

On December 16, 2020, I issued an order to show cause, finding that the record as it currently stood was not supportive of the severity component of Petitioner's claim. ECF No. 29. I informed Petitioner that his claim could not proceed unless Petitioner provided sufficient evidence (to date not filed) to establish that he suffered the residual effects of his injury for more than six months, or suffered an in hospital surgical intervention. *Id.* at 6; *see* Section 11(c)(1)(D). I allowed him 60 days to provide additional evidence to satisfy the statutory six-month requirement. Order to Show Cause at 4.

On January 26, 2021, Petitioner filed a response to the order to show cause. ECF No. 30. In it, he reiterated his prior argument that he continues to experience left shoulder pain but has not sought medical treatment due to the fear it will affect his employment status. *Id.* at 1. Maintaining that the evidence provided by his mother, brother, and wife is sufficient to support his assertions of ongoing symptoms and to overcome the lack of evidence in his medical records, Petitioner requested that I conduct an evidentiary hearing to assess the credibility of the affiants in this case. *Id.* at 2-3.

The matter is now ripe for adjudication.

## II. Medical History

The medical records establish that, prior to vaccination, Petitioner was routinely seen for follow-up regarding his type 1 diabetes, other usual conditions, and periodic certifications for his employment, from late 2015 through the end of August 2018, at the two clinics within the University of Utah's Health Care System.[3] Exhibit 5. During this time, it appears that Petitioner's employer, the South Jordon Fire Department, limited his activities to paramedic duties only due to his difficulties controlling his blood sugar levels after losing insurance coverage for the cost of his insulin pump. *Id.* at 81. On August 30, 2017, Petitioner received another evaluation to determine if he could continue his paramedic duties. It was noted that he had obtained an insulin pump again and had been seen by an endocrinologist, who believed that Petitioner had established the ability to control his blood sugar levels sufficiently to perform his current duties, as well as awareness of the health issues posed if he failed to do so. *Id.*

On October 16, 2017, Petitioner received a flu vaccine in his left deltoid, administered by personnel from the Intermountain Pharmacy Services at a Davis County Health Fair. Exhibit 2 at 2; *see also* Exhibit 1 at ¶ 4 (explaining the details regarding Petitioner's vaccination). Twelve days later, on October 28, 2017, he sought treatment for

[3] For all appointments prior to August 30, 2017, Petitioner was seen at the South Jordan Health Center. Exhibit 5 at 1-80. For the August 30, 2018 appointment, he was seen at Redwood Health Center. *Id.* at 81-101.

left shoulder pain from Nicole Summers, D.O. at Kaysville Creekside InstaCare. Exhibit 3 at 1.

At this visit, Petitioner reported soreness for one to two days which improved, then continued pain. Exhibit 3 at 1. Upon examination, he exhibited no pain upon palpitation, full range of motion ("ROM") with pain at the extremes, and normal strength. *Id.* at 1-2. While acknowledging that local inflammation could have worsened Petitioner's condition, Dr. Summers attributed his left shoulder pain to underlying tendonitis. She instructed him to rest his arm, take Aleve, and return in one to two weeks if his pain did not resolve. According to this record, Petitioner's ongoing conditions included uncontrolled diabetes, high blood pressure and cholesterol, and exercise induced asthma. *Id.* at 1.

Three days later, on October 31, 2017, Petitioner sought treatment of his left shoulder pain from Christopher Bell, M.D. at McKay Dee Orthopedics and Sports Medicine Clinic. Exhibit 4. At that time, Petitioner described dull, sharp pain at the top of his left shoulder, rated at a level of seven out of ten. Exhibit 4 at 1. However, upon examination, he exhibited full ROM, no pain upon palpitation, and full ROM. *Id.* at 2. Dr. Bell opined that Petitioner's pain was likely due to the flu vaccine he received, which he described as improperly placed and discussed multiple treatment options: continuing his current restrictions and pain medication, participating in a home exercise program or formal physical therapy ("PT"), or undergoing a cortisone injection or MRI. Petitioner opted to take ibuprofen and to engage in a home exercise program. *Id.* at 3. This record lists the same ongoing conditions noted in the October 18, 2017 medical record. *Id.* at 1.

His post-vaccination medical records show that Petitioner was seen routinely for his diabetes, often described as uncontrolled. Exhibit 12. On October 12, 2018, Petitioner was treated for difficulties swallowing thought to be attributed to a foreign body in his esophagus which passed while he was in the emergency room. Exhibit 11 at 75. He was instructed to follow-up with a gastrointestinal specialist and told he should undergo an endoscopy. *Id.* In August 2019, Petitioner visited the emergency room after experiencing chest discomfort, described as pain located in the left side of his chest and radiating laterally, while climbing to the eighth floor of a burning building with his equipment. Exhibit 11 at 5-21; Exhibit 12 at 275-77.

## III. Affidavits

There are no medical record entries indicating Petitioner sought treatment for his left shoulder pain after October 31, 2017, several weeks post-vaccination, nor does Petitioner so allege. Instead, he relies on statements made by his brother, wife, and mother in their affidavits and his assertions that he experienced ongoing symptoms but

avoided seeking medical care due to his concern regarding any potential effect on his employment as a fireman.

### A. Petitioner's Affidavits

In his initial affidavit, Petitioner provided an account of his vaccination, left shoulder pain, and treatment during October 2017 which matches the information contained in his medical records. Exhibit 1 at ¶¶ 4-7 (Petitioner's affidavit executed Sept. 21, 2018). He also asserted that he "continue[d] to have intermittent pain and lack of mobility in [his] left shoulder." *Id.* at ¶ 8; *accord. id.* at ¶ 12. Reporting that he still performs the home exercises prescribed by his orthopedist, Dr. Bell, to strengthen his rotator cuff (*id.* at ¶¶ 7-8), Petitioner maintained that he "did not follow-up regularly with [his] physician because [he] perceived the recommendation would be continued exercise" (*id.* at ¶ 10). Petitioner assessed his condition as "stable with mild improvement" (*id.* at ¶ 9) and indicated that he "d[id] not anticipate that [he] will see any additional improvement" (*id.* at ¶ 11).

In his supplemental affidavit, Petitioner provided more detail regarding the reason for his lack of medical care, asserting that he "did not seek any additional medical treatment . . . because of [his] type of employment and no medical insurance for a time period." Exhibit 13 at ¶ 2. He maintained that "[i]t is not uncommon for firefighters to hide illnesses or injuries in order to maintain their active duty status and employment" (*id.* at ¶ 9) as "any indication of injury leads to a designation of 'light duty'" which can lead to termination (*id.* at ¶ 8). Petitioner asserted that "it is more difficult to obtain a position as a firefighter than it is to be accepted to medical school." *Id.* at ¶ 11. In addition to volunteering at the Plain City Fire Department from December 2014 through July 2019, Petitioner indicated he has been employed as follows:

| | |
|---|---|
| August 2016 – December 2018: | as an EMT at Gold Cross Ambulance |
| January 2018 – June 2018: | at Fire Academy |
| June 2018 - ??: | at Roy Fire Department |
| January 2019 – October 2019: | at Ogden Fire Department |
| April 2020 – current: | at Roy Fire Department and Juab County EMS |

*Id.* at ¶¶ 3-7.

### B. Family Member Affidavits

Petitioner also provided affidavits from his brother, mother, and wife. Exhibits 7-9. Although these affidavits contain a few instances of reported pain and limited ROM to third parties, these statements are based upon information provided by Petitioner to his family members. For example, his brother recalled that Petitioner complained of left

shoulder pain and limited ROM during an April 2018 camping trip. Exhibit 7 at ¶ 6. However, his brother did not describe any instances when he observed the effects of these limitations. Similarly, his mother recalled that Petitioner expressed a concern he would not pass his physical examination, specifically the bench press and push-up portion when testing for a position with the Ogden Fire Department in January 2019. Exhibit 9 at ¶¶ 6-7. Yet it appears Petitioner passed the physical examination as he began working for the Ogden Fire Department in January 2019. Exhibit 13 at ¶ 6.

In her affidavit, Mrs. Turley recounted that Petitioner complained of left shoulder pain the day he received his flu vaccine and that she observed he could not lift his arm two days thereafter. Exhibit 8 at ¶¶ 7-8. Regarding any later symptoms, she stated only that Petitioner "has continued to experience intermittent pain and lack of mobility." *Id.* at ¶ 9. She provided no specific examples or details regarding the bases for this assertion. Petitioner's wife recalled him saying, In November 2018, that he should not receive a flu vaccine the next year. *Id.* at ¶ 10.

## IV. Applicable Legal Standards

As stated by Congress when amending the Vaccine Act in 1987, the six-month severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2313–1, 2313–373. The only exception is the alternative added in 2000, a showing that the vaccine injury required inpatient hospitalization and surgical intervention. *Children's Health Act of 2000*, Pub. L. No. 106–310, § 1701, 114 Stat. 1101, 1151 (2000) (codified as amended at 42 U.S.C. § 300aa–11(c)(1)(D)(iii)). This exception was added to allow compensation in intussusception cases which often required surgical intervention but then resolved in less than six months. *Id.*

## V. Analysis

The record incontrovertibly establishes that Petitioner sought medical care for his left shoulder pain on only *two* occasions, approximately two weeks after vaccination. The medical records from these visits reveal Petitioner's symptoms were less severe than those normally seen in SIRVA cases. At both visits, Petitioner exhibited no pain upon palpitation and normal strength and ROM. Petitioner's report of significant pain, rated as seven out of ten is the only evidence of a more substantial injury, and it is undercut by the observations of the physicians who treated Petitioner. Additionally, the characterization of a mild injury is reinforced by Petitioner's choice of home exercises and ibuprofen from the various treatments proposed to him by Dr. Bell. Given that this October 31, 2017 visit occurred more than two months before Petitioner started at the Fire

Academy, it would have been reasonable for him to have chosen more aggressive treatment such as a cortisone injection, MRI imaging, and/or formal PT, had his symptom been significant.

While Petitioner's concern for his employment status is understandable, there is evidence in the medical record which undercut this explanation for his reluctance to seek treatment. Other conditions, such as his diabetes and exercised induced asthma, which could *also* have affected Petitioner's ability to perform his duties as a fireman, are well documented in his medical records. There is no indication that Petitioner was reluctant to seek treatment for these disorders out of concern for how it would impact his job.

Thus, throughout 2018 and 2019, Petitioner continued to obtain medical care for his other ongoing conditions, specifically his diabetes. On two occasions he visited the emergency room - in 2018 for difficulties swallowing, and in 2019 for chest pain. When he complained of left sided chest pain which radiated laterally, he could have mentioned any left shoulder pain or limited ROM he was experiencing but did not.

Additionally, there is no evidence that Petitioner's ability to perform his fireman duties was negatively affected by alleged ongoing left shoulder pain. Given the physical requirements of the job, it is unrealistic to expect someone with a continuing SIRVA injury to perform without negative consequences for more than three years. Even when Petitioner reported other difficulties, such as the chest pain he experienced in 2019 when climbing to the eighth floor of a burning building with his equipment, he failed to mention any left shoulder issues. There is no indication that Petitioner failed any of the strenuous physical training and examinations required of firefighters.

There is otherwise no evidence in Petitioner's medical records to support Petitioner's claim of intermittent pain and limited ROM. And careful scrutiny of the witness statements provided by Petitioner reveal that they are typically recitations of assertions that he made, rather than contemporaneous recollection of instances in which the Petitioner actually informed a third party of his health status. Thus, they have limited probative value.

The Vaccine Act prohibits me from finding a petitioner entitled to compensation based upon the petitioner's claims alone, unsubstantiated by medical records or by medical opinion. Section 13(a). As I stated in my order to show cause, Petitioner has provided no evidence to substantiate severity which is not based upon his personal assertions. And allowing Petitioner or other third parties to testify at a fact hearing would not cure this deficiency, since it would remain the case that severity was not corroborated

by fact evidence, but instead supported only by witnesses recounting what Petitioner told them.[4] Accordingly, Petitioner's inability to establish severity is fatal to his claim.

## VI. Conclusion

To date, and despite ample opportunity, Petitioner has failed to provide preponderant evidence that he suffered the residual effects of his injury for more than six months or suffered an in hospital surgical intervention. Section 11(c)(1)(D).

Petitioner was informed that failure to provide preponderant to satisfy the Vaccine Act's severity requirement would be treated as either a failure to prosecute this claim or as an inability to provide supporting documentation for this claim. Accordingly, this case is DISMISSED for failure to prosecute. The clerk shall enter judgment accordingly.[5]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[4] I note as well that I am not bound to hold a hearing in any event simply because Petitioner requests I do so. Pursuant to Section 12(d)(3) and Vaccine Rule 8, special masters determine the format for evidence and argument in vaccine cases, and need not adhere to the standards for evaluation of a summary judgment motion in all cases. *Kreizenbeck v. Sec'y of Health & Human Servs.,* 945 F.3d 1362, 1366 (Fed. Cir. 2020); *see also* Vaccine Rule 8(d).

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.